# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| TEAMSTERS GENERAL DRIVERS WAREHOUSEMEN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:09-CV-2252 |
| GREIF PACKAGING, LLC, | § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this suit to enforce a labor arbitration award, Plaintiff Teamsters General

Drivers Warehousemen and Defendant Greif Packaging, LLC, have filed cross-

motions for summary judgment.[1] The parties have filed responses and replies,[2] as well

---

[1]     Plaintiff's Motion for Summary Judgment [Doc. # 10]; Plaintiff's Memorandum in
        Support of Motion for Summary Judgment [Doc. # 11] ("Plaintiff's Memorandum");
        Defendant Greif Packaging LLC's Motion for Summary Judgment [Doc. # 12]
        ("Defendant's Motion").

[2]     Response of [Plaintiff] to Motion for Summary Judgment of Defendant Greif
        Packaging, LLC [Doc. # 13]; Defendant Greif Packaging LLC's Response to the
        Union's Motion for Summary Judgment [Doc. # 14]; Motion to Strike Defendant
        Greif Packaging, LLC's Response to the Union's Motion for Summary Judgment or
        in the Alternative Reply to that Response [Doc. # 15]; Defendant Greif Packaging,
        LLC's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment
        [Doc. # 16].

as ancillary motions.[3]  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Plaintiff's Motion should be **granted** and Defendant's Motion should be **denied**.

## I.    BACKGROUND

Plaintiff Teamsters General Drivers, Warehousemen, Helpers Production Maintenance and Service Employees Local Union No. 968 (the "Union") has sued Defendant Greif Packaging, LLC, to enforce an arbitration award.  Greif and the Union are signatories to a collective bargaining agreement ("CBA") effective during all times relevant to this litigation.[4]

Greif manufactures packaging products, buckets, and steel drums.   John Montemayor, a member of the Union, began working for Grief as a press operator in June 1986, at Greif's plant in La Porte, Texas.  Montemayor was terminated by Greif on October 10, 2008, for allegedly violating a safety rule.  His termination led to the

---

[3]    Plaintiff filed a motion to strike Defendant's summary judgment response as untimely. Motion to Strike Defendant Greif Packaging, LLC's Response to the Union's Motion for Summary Judgment or in the Alternative Reply to that Response [Doc. # 15]. Defendant has moved to strike the affidavit of Carl Moore, submitted by Plaintiff with its summary judgement response.  Defendant Grief Packaging, LLC's Motion to Strike Motion for Summary Judgment Evidence [Doc. # 17].  Plaintiff responded to Defendant's motion to strike the Moore Affidavit.  *See* Doc. # 18.  Because the Court does not rely on the Moore Affidavit in reaching its decision, the Defendant's motion to strike will be denied as moot.

[4]    CBA (Exhibit A to Plaintiff's Memorandum).

grievance and arbitration that forms the basis for this lawsuit.

A previous disciplinary action is also relevant to the case at bar.  On March 27, 2007, Montemayor was involved in a workplace dispute with a co-worker, whom Montemayor physically threatened.  As discipline for the incident, Montemayor was suspended without pay for five work days.  He returned to work subject to a Last Chance Agreement, which read as follows:

> You are hereby on a last and final warning for a period of eighteen months (18) year [sic] from the date you return to work, April 11, 2007, through October 11, 2008 after signing this letter.  If your behavior towards others is unsatisfactory or you fail to comply with any infraction of Greif Rules & Regulations or Policy, including making threatening remarks to other employees, you are subject to immediate termination of employment.[5]

Montemayor signed the Last Chance Agreement on April 12, 2007.

On October 8, 2008, three days before the Last Chance Agreement was to expire, plant supervisor Tim Seymour observed Montemayor in the process of

---

[5]      Letter from Brian Ellenberg to John Montemayor, dated April 11, 2007 (Exhibit D to Defendant's Motion) ("Last Chance Agreement" or "LCA"), at 1.  The Last Chance Agreement further states:

> If you fail to comply with these expectations you are subject to disciplinary action that can include discharge.  You should expect that if you commit other acts such as you committed on February 27, 2007, you will be terminated.  If you are terminated for violating the terms of this last chance letter, the only subject that can be grieved is whether or not you committed that act that you are then charged with, not the penalty.

*Id*. at 2.

changing dyes on a press machine.   Seymour checked to determine whether Montemayor had properly "locked out" the equipment prior to changing the dyes, which is a safety procedure to ensure that the equipment is not accidentally placed in operation while being serviced.   Seymour found that Montemayor had locked the power supply, but had left the key in the lock.   Greif maintains in this Court, as in arbitration, that Montemayor's failure to remove the key was a violation of safety rules about which Montemayor had been fully trained, and that the violation could have caused serious injury to Montemayor or others.

Montemayor was pulled off the production floor and met with Seymour and other Greif officials.   Montemayor admitted that he was in a hurry and "screwed up" by forgetting to take his keys out of the lock.   He was suspended indefinitely.   On October 10, 2008, Seymour converted Montemayor's suspension to termination.[6] Seymour stated that the termination was for violation of "established lockout/tag out procedures" on page 1 of Grief's Safety Rules, as well as violation of the Last Chance Agreement.[7]

---

[6]     Letter from Tim Seymour to John Montemayor, dated October 10, 2008 (Exhibit C to Defendant's Motion).

[7]     *Id*.  The safety rule to which Greif cites states, "Examples of serious safety violations that may result in *immediate termination of employment include, but are not limited to* . . . [v]iolations of established lockout/tagout procedures."  Greif Safety Rules (Exhibit E to Defendant's Motion), at 1 (emphasis original).  Greif also cites to regulatory language in 29 C.F.R. § 1910.147.

The Union filed a grievance protesting Montemayor's termination and the parties went to arbitration, with both parties agreeing to the issue as framed: "Whether or not John Montemayor, the grievant herein was discharged for just cause?  If not, what is the appropriate remedy?"[8]   Arbitrator Ruben R. Armendariz held for the Union.   The Arbitrator found, first, that Montemayor had properly locked the equipment, and had not violated Greif rules or OSHA safety regulations:

> This arbitrator has reviewed all company exhibits provided herein and there is no checklist that says leaving a key in a locked lock is a violation of the lockout/tagout procedure.  Moreover, nowhere in OSHA regulations does it specifically say that a failure to remove a key from a locked lock constitutes an improper lockout.  However, under a reasonable person standard, removal of the key from a lock is implied. . . . Of paramount importance regarding a lockout procedure is that grievant's equipment was fully secured when grievant was changing the dye.  Thus, the equipment was properly locked out and was not injurious to self or others.  Grievant was authorized to use the lock and the key, no one else was authorized and there is no reason for anyone else to unlock the lock to energize and engage the equipment.  Thus, this arbitrator is not persuaded that grievant's failure to remove the key from the lock when it is locked violated Greif's safety rules, procedure, policy or OSHA regulations because the equipment was properly locked and secured.[9]

---

[8]   Arbitrator's Opinion and Award, dated June 19, 2009 (Exhibit B to Plaintiff's Memorandum), at 3 ("Award").

[9]   *Id*. at 9.  *See id*. at 11 ("this arbitrator believes that removing the key from the lock is implied.  However, the termination of a long-term employee should not be based on implication, especially when the employee otherwise followed the stated procedure, *i.e.*, he locked out the equipment."); *id*. at 11 n. 4 ("Management can make the rule clear by amending the rule to include removal of the key as part of the lockout (continued...)

The Arbitrator further found unconvincing Greif's argument that other employees had been terminated for similar infractions, because the two cases submitted by Greif in support of the argument involved employees who failed to lock out their equipment, whereas Montemayor had locked the equipment but failed to remove the key.[10]

The Arbitrator determined that, because Montemayor had not violated any safety rules, he had not violated the Last Chance Agreement's provision requiring him to comply with Greif's safety rules.[11]   Therefore, he held that Greif did not have "just cause" under the Last Chance Agreement to terminate Montemayor, and ordered that Greif reinstate Montemayor to his former position and make him whole with respect to wages and benefits.[12]

Greif has refused to comply with the Award.  The Union therefore filed this suit to enforce the Award.  Greif countersued, requesting that the Court vacate the Award pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The parties have filed cross-motions for summary judgment, which now are ripe for

---

[9]      (...continued)
         procedure.  As this was not clearly stated, this arbitrator will not amend the rule.").

[10]     *Id.* at 10-11.

[11]     *Id.* at 11-12.

[12]     *Id.* at 12.

decision.

## II.    **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[13]   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[15]   The moving party, however, need not negate the elements of the non-movant's case.[16]   The moving party may meet its burden by pointing out "the

---

[13]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[14]     Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[15]     *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[16]     *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

absence of evidence supporting the nonmoving party's case."[17]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[18] "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[20] However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[21] The non-movant's burden is not met by mere reliance on the allegations or

---

[17]   *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[18]   *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[19]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[20]   *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[21]   *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

denials in the non-movant's pleadings.[22]   Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[23]   Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[24]   In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[25]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[26]   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[27]

Finally, "[w]hen evidence exists in the summary judgment record but the

---

[22]   *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[23]   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[24]   *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

[25]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[26]   *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[27]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[28]

## III.   ANALYSIS

The parties' summary judgment motions present two issues: first, whether the Award should be enforced or vacated, and second, whether the Union is entitled to attorneys' fees.

### A.    Judicial Review of Arbitrator's Award

Judicial review of an arbitration award is extremely limited, and the award is entitled to great deference.[29]   "As long as the arbitrator's decision 'draws its essence from the collective bargaining agreement' and the arbitrator is not fashioning 'his own brand of industrial justice,' the award cannot be set aside."[30]   When the parties enter

---

[28]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

[29]   *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *Continental Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399, 405 (5th Cir. 2009); *Resolution Performance Prods., LLC v. Paper Allied Indus. Chem. and Energy Workers Int'l Union, Local 4-1201*, 480 F.3d 760, 764 (5th Cir. 2007).

[30]   *Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001) (quoting *United Paperworkers Inc'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

a Last Chance Agreement, such agreement "must be thought of as a supplement to the CBA," and the same deferential standard of review applies.[31]  Even when a court would have interpreted the contract differently, the court must affirm the award if the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority."[32]

> When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award.[33]

In fact, even when a court is convinced that an arbitrator "committed serious error," the resulting award may not be vacated so long as the arbitrator has not exceeded his authority.[34]  When, however, an arbitrator exceeds his or her authority by failing to act in conformity with the jurisdictional prerequisites of the collective bargaining agreement, or by acting contrary to its unambiguous provisions, the courts may set

---

[31]   *Continental Airlines, Inc. v. Int'l Bhd. of Teamsters*, 391 F.3d 613, 618 (5th Cir. 2004).

[32]   *Resolution Performance*, 480 F.3d at 765 (internal quotation marks and citations omitted).

[33]   *Garvey*, 532 U.S. at 509 (quoting *Misco*, 484 U.S. at 39).

[34]   *Garvey*, 532 U.S. at 509; *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005).

aside the award.[35]

### 1.    Whether Arbitrator Exceeded His Contractual Authority

Defendant argues that the Arbitrator exceeded his contractual authority because his Award did not draw its essence from the CBA and Last Chance Agreement ("LCA"), but rather dispensed the Arbitrator's own brand of industrial justice.  In particular, Defendant argues that the Arbitrator impermissibly ignored the LCA provision requiring termination for violation of Greif's safety rules when he held that Greif lacked just cause to terminate Montemayor.[36]

This argument from Defendant, however, would require a finding that Montemayor actually violated Greif's safety rules.  Defendant argues strenuously that he did so, presenting arguments to this Court that federal regulations establish lockout as the preferred method for disabling equipment,[37] and that "[l]eaving the key in the lock renders the lock into something other than the regulatory-defined 'lockout device,' because it does not prevent an easy and readily accessible way to remove the

---

[35]    *Resolution Performance*, 480 F.3d at 765; *Beaird*, 404 F.3d at 946; *Bruce Hardwood Floors v. UBC, So. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 452 (5th Cir. 1997);  *Houston Lighting & Power Co. v. Int'l Brotherhood of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 182 (5th Cir. 1995).

[36]    Defendant's Motion, at 7 (citing Greif Safety Rules (Exhibit E to Defendant's Motion), at 1 ("Examples of serious safety violations that may result in *immediate termination of employment include, but are not limited to . . .* [v]iolations of established lockout/tagout procedures") (emphasis original).

[37]    Defendant's Motion, at 8-9 (quoting 29 C.F.R. § 1910.147).

lock."[38]  Defendant also argues that Montemayor admitted error immediately after the

incident when he stated that he "screwed up," and that this admission conclusively

establishes that Greif's safety rules were violated.[39]

The Arbitrator addressed these arguments from Greif, and resolved the factual

questions in the Union's favor.  He considered Defendants' arguments regarding

federal regulations[40] and Montemayor's admission of error,[41] and found that

Montemayor had not violated the safety rules and, therefore, had not violated the LCA

provision requiring compliance with plant rules and regulations:

> This arbitrator has found that grievant did not violate Greif's Safety
> Rules, procedures, policy or OSHA Regulations.  Thus, grievant did not
> violate Item 3 (Comply with the plant rules and regulations) of his LCA
> as argued by the Company and there is no evidence that he engaged in

---

[38]   *Id*. at 9.

[39]   *Id*. at 9-10.

[40]   Award, at 9 ("nowhere in OSHA regulations does it specifically say that a failure to
remove a key from a locked lock constitutes an improper lockout"); *id*. ("this
arbitrator is not persuaded that grievant's failure to remove the key from the lock
when it is locked violated Grief's safety rules, procedure, policy or OSHA regulations
because the equipment was properly locked and secured").

[41]   *Id*. at 3 ("Grievant admitted he was in a hurry and forgot to take his key out of the
lock"); *id*. at 8 ("Grievant admitted that he was in a hurry and screwed up when he
inadvertently left the key in the lock").  *See also id*. at 11 ("As noted above, this
arbitrator believes that removing the key from the lock is implied.  However, the
termination of a long-term employee should not be based on implication, especially
when the employee otherwise followed the stated procedure, i.e., he locked out the
equipment.")

any other breach of the conditions stated in the LCA.[42]

Contrary to Defendant's argument that the Arbitrator "ignored" the LCA provision regarding termination for violation of safety rules, the Arbitrator explicitly considered the LCA and the disciplinary probation it imposed on Montemayor.

The Arbitrator found that Montemayor was the only person authorized to use the key to the equipment at issue, that there was no reason for any other person to unlock and engage the equipment, and therefore that "the equipment was properly locked and secured," even with the key in the lock.[43]  Greif has cited nothing to this Court that contradicts the Arbitrator's determination that Montemayor was not explicitly required, by either Greif's rules or by federal regulations, to remove the key from the locked lock.[44]  Greif's safety rules merely require compliance with "established lockout/tagout procedures," with no language addressing removal of the key.[45] Although Greif's Motion quotes numerous provisions of 29 C.F.R. § 1910.147,

---

[42]     *Id*. at 12.

[43]     *Id*. at 5.

[44]     *See id*. at 9 ("This arbitrator has reviewed all company exhibits provided herein and there is no checklist that says leaving a key in a locked lock is a violation of the lockout/tagout procedure.   Moreover, nowhere in OSHA regulations does it specifically say that a failure to remove a key from a locked lock constitutes an improper lockout.").

[45]     Greif Safety Rules (Exhibit E to Defendant's Motion), at 1 ("Examples of serious safety violations that may result in *immediate termination of employment include, but*
(continued...)

none of the quoted language explicitly requires removal of the key from the lock.[46]

Moreover, even if this Court were to agree that Defendant's reading of the safety rules and the LCA were the more reasonable reading, the Court is not authorized to vacate the Award unless it fails to "draw its essence" from the CBA and LCA.[47]

> Although the arbitrator's construction of the contractual provision may not be the only possible construction or even a correct one, it must nevertheless be upheld unless it is not rationally inferrable from the letter (or even the purpose) of the CBA.[48]

In this case, the LCA explicitly permitted the type of grievance filed on behalf of Montemayor, *i.e.*, a grievance to determine "whether or not you committed [the] act that you are then charged with."[49]   The Union filed a grievance arguing that Montemayor had not committed the safety rule violation charged by Greif.   The Arbitrator interpreted and applied the CBA and the LCA, and decided the question

---

[45]   (...continued)
*are not limited to* . . . [v]iolations of established lockout/tagout procedures")
(emphasis original).

[46]   Defendant's Motion, at 8-9 (quoting 29 C.F.R. § 1910.147).

[47]   *See Resolution Performance*, 480 F.3d at 764-65.

[48]   *Teamsters Local No. 5 v. Formosa Plastics Corp.*, 363 F.3d 368, 371 (5th Cir. 2004)
(citing *National Gypsum Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 147 F.3d
399, 402 (5th Cir. 1998)) (internal quotation marks and alterations omitted).

[49]   LCA, at 2 ("If you are terminated for violating the terms of this last chance letter, the
only subject that can be grieved is whether or not you committed that act that you are
then charged with, not the penalty").

presented in favor of the Union.  The Arbitrator's award of back wages hews faithfully to the CBA.[50]

Defendant cites to cases in which an arbitration award was vacated because the arbitrator exceeded his or her contractual authority,[51] and urges this Court to do the same.  Defendant's cases, however, are factually distinguishable from the case at bar. In *Bruce Hardwood Floors*, the arbitrator found that the employee had lied to obtain time off from work, but then refused to apply a relevant CBA provision requiring immediate discharge of the employee for engaging in immoral conduct.  The Fifth Circuit vacated the arbitrator's award, holding that, "[i]n refusing to apply [the CBA provision requiring immediate discharge], the arbitrator exceeded the express limitations of his contractual mandate."[52]  Similarly, in *Houston Lighting & Power*, the Fifth Circuit vacated an arbitration award in which the arbitrator concluded that an employee should not have been laid off during the employer's reduction in force. The award rested upon the arbitrator's own re-evaluation of the employee's

---

[50]     The Arbitrator awarded back wages to Montemayor and, in so doing, cited and tracked the language of Article 6.4(D) of the CBA, which places limits on such awards.  Award, at 12.

[51]     *See Bruce Hardwood Floors*, 103 F.3d 449; *Houston Lighting & Power*, 71 F.3d 179.

[52]     *See Bruce Hardwood Floors*, 103 F.3d at 452.  The Fifth Circuit also held that the arbitrator's award in *Bruce Hardwood Floors* was "further undermined" because its imposed penalty of a ten-day suspension was not provided for by the CBA.  *Id*.  By contrast, the Award in this case carefully tracked the requirements of Article 6.4(D) of the CBA.  Award, at 12.

qualifications and recalculation of the employee's performance rating. The Court held that the award exceeded the arbitrator's authority because the parties' contract did not give the arbitrator the authority to re-evaluate the employee's qualifications.[53]  In the case at bar, however, the Arbitrator applied the CBA and LCA's disciplinary provisions when deciding a claim specifically authorized by the LCA, *i.e.*, whether Montemayor actually had committed the alleged safety violation with which he was charged.  In so doing, the Arbitrator properly exercised his contractual authority under the CBA and LCA. This Court therefore lacks authority to vacate the award.[54]

### 2.    Whether the Arbitrator Imposed an Impermissible Burden of Proof

The Arbitrator required Greif to prove "just cause" for termination by "clear

---

[53]    *Houston Lighting & Power*, 71 F.3d at 184 ("The Company has the exclusive right to make the employee qualification determinations.  Nowhere in the Agreement does it state that redetermination shall be made by the arbitrator.  If the [A]rbitrator had found that the evaluation process was not consistent with the Agreement, then the Arbitrator should remand the matter to the Company so that *the Company* can make the re-determination of the employee's qualifications under another valid process.") (emphasis original).

[54]    *See Resolution Performance*, 480 F.3d at 766 (arbitrator performed her task of construing an ambiguous provision of the CBA, and "mere disagreement with the performance of that task is not alone a basis for vacating the award"); *Weber Aircraft*, 253 F.3d at 824-25 (upholding award of arbitrator who, in determining that employer lacked just cause to terminate employee, rendered a "plausible" interpretation of the CBA); *Teamsters Local No. 5*, 363 F.3d at 371 (reversing district court order vacating arbitration award because arbitrator was construing the CBA and the arbitrator's determination did not violate or change any CBA language).

and convincing evidence," a higher standard than the preponderance of the evidence.[55]
The Arbitrator did not give reasons for application of the higher standard except to say
that it was appropriate given the allegation that Montemayor had violated the
employer's safety rules.  Greif argues that the proper standard was a preponderance
of the evidence, and that by imposing the higher standard the Arbitrator violated the
CBA and exceeded his contractual authority.[56]

Defendant does not cite to any provision of the CBA or LCA that requires use
of the preponderance standard.  Instead, Defendant cites to one Sixth Circuit case,
*Allen v. Allied Plant Maintenance Co. of Tenn., Inc*., which applied that  standard.[57]
*Allen*, however, involved allegations of a conspiracy between a union and an employer
to discharge an employee.  Its holding regarding the appropriate burden of proof is
specific to the conspiracy claim, and concerns the burden applied by the district court,
not by an arbitrator.  *Allen* therefore provides no support for Defendant's argument
regarding the proper burden of proof during arbitration.

The party moving to vacate an arbitration award has the burden of proof.[58]

---

[55]     Award, at 7-8.

[56]     Defendant's Motion, at 13.

[57]     881 F.2d 291, 295 n.1 (6th Cir. 1989).

[58]     *Lummus Global Amazonas S.A. v. Aguaytia Energy Del Peru, S.R. LTDA*, 256 F.
Supp. 2d 594, 604 (S.D. Tex. 2002) (Rosenthal, J.) (citing *Spector v. Torenberg*, 852
(continued...)

Defendant has directed the Court to no authority suggesting that an arbitrator is required to apply a preponderance standard in a case with the claims asserted here, rather than the higher "clear and convincing" standard.  Moreover, Defendant has cited no authority supporting its argument that an arbitrator's application of the "clear and convincing" standard is grounds to vacate the arbitrator's award.  Defendant's argument therefore is rejected.[59]

### 3.     Whether the Award Violated Public Policy

Defendant argues that the Arbitrator's Award violated public policy because it ignored Montemayor's workplace safety violation.[60]

Arbitration awards may be set aside by the courts if they violate public policy.[61] This public policy exception, however, is extremely narrow, requiring that the policy relied upon be "well defined and dominant," and "ascertained by reference to the laws

---

[58]     (...continued)
F. Supp. 201, 206 (S.D.N.Y. 1994)).

[59]     Moreover, it is far from clear that the Award in this case would have been different if the Arbitrator had required Greif to prove by a preponderance of the evidence, rather than by clear and convincing evidence, that Montemayor was terminated for just cause.  The Arbitrator's decision rested upon his finding that Montemayor had not violated any Company rule or federal regulation, and he specifically found that no company documents or OSHA regulations required Montemayor to remove a key from a locked lock.  Award, at 9.

[60]     Defendant's Motion, at 13-15.

[61]     *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766 (1983) ("As with any contract . . . a court may not enforce a collective bargaining agreement that is contrary to public policy").

and legal precedents and not from general considerations of supposed public interests."[62] The fact that a judgment is "firmly rooted in common sense,"[63] such as terminating a safety-sensitive manufacturing employee who used drugs, does not establish that it meets the requirements of the public policy exception.[64]  As noted by the Fifth Circuit, appellate court rulings that invoked the public policy exception to protect the "common sense notion of public safety" have repeatedly been reversed by the Supreme Court.[65]

Defendant's assertion that termination of employees who violate safety procedures is a well-defined and dominant public policy is foreclosed by the authority cited above.  Defendant has demonstrated no  public policy, as articulated in positive

---

[62]   *Continental Airlines*, 555 F.3d at 415-16 (citing *W.R. Grace*, 461 U.S. at 766); *Weber Aircraft*, 253 F.3d at 825-26.

[63]   *Misco*, 484 U.S. at 44.

[64]   *Eastern Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 67 (2000) ("Neither Congress nor the Secretary has seen fit to mandate the discharge of a worker who twice tests positive for drugs. We hesitate to infer a public policy [against reinstatement of employees who tested positive for drug use] that goes beyond the careful and detailed scheme Congress and the Secretary have created.").

[65]   *Continental Airlines*, 555 F.3d at 418.  *See, e.g.*, *Misco*, 484 U.S. at 44 ("The Court of Appeals made no attempt to review existing laws and legal precedents in order to demonstrate that they establish a 'well-defined and dominant policy' against the operation of dangerous machinery while under the influence of drugs.  Although certainly such a judgment is firmly rooted in common sense, we explicitly held in *W.R. Grace* that a formulation of public policy based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective-bargaining agreement.").

law, that *mandates* termination of an employee who allegedly violates a lockout procedure.[66]   Rather, the question of "just cause" for termination was properly assigned to the arbitrator,[67] who found that Montemayor's actions did *not* violate Greif's lockout procedure.  The public policy exception therefore provides no basis for vacatur of the Award.

### B.    Attorneys' Fees

Plaintiff seeks to recover its attorneys fees.  In a suit to enforce an arbitration award, the prevailing party is entitled to attorneys' fees when the other party refused "without justification" to abide by the award.[68]  Defendant argues that its refusal to abide by the Award is not without justification because the Arbitrator exceeded his contractual authority[69]—an argument the Court rejected above.

Simply because a party's challenge to an arbitration award is unsuccessful,

---

[66]    *See Eastern Associated Coal*, 531 U.S. at 67; *Misco*, 484 U.S. at 44.

[67]    *See Misco*, 484 U.S. at 45 n. 11 ("The issue of safety in the workplace is a commonplace issue for arbitrators to consider in discharge cases, and it was a matter for the arbitrator in the first instance to decide whether Cooper's alleged use of drugs on the job would actually pose a danger.").

[68]    *Bruce Hardwood Floors*, 103 F.3d at 453; *International Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co. ("Texas Steel II")*, 639 F.2d 279, 283 (5th Cir. 1981).

[69]    *See Bruce Hardwood Floors*, 103 F.3d at 453 ("Because we have concluded that the arbitrator exceeded his contractual authority, we do not find that Bruce's refusal to abide by the arbitration decision was without justification").

however, does not mean that the challenge was "without justification."[70] On the other hand, a party's mere assertion that the arbitrator exceeded his or her authority "does not compel the conclusion that the party's position must have been justified," because "[p]ractically any contention could be so characterized."[71]   The Court therefore must "look to the realities of the situation" to discern whether the party's challenge, when properly characterized, addressed the arbitrator's jurisdiction or the "intrinsic merits" of the dispute.[72]

In the case at bar, Greif argued that the Arbitrator exceeded his contractual authority by ignoring the termination provisions of the LCA.  However, Greif's argument regarding the termination provision is wholly dependent on the premise that Montemayor actually violated Greif's safety rules, and Greif spends much of its briefing arguing that such a violation occurred.  This argument about the rule violation goes to the "intrinsic merits" of the dispute before the Arbitrator.  The Arbitrator heard evidence on, and decided, the question of the rule violation.  Greif simply disagrees with the Arbitrator's opinion.  Attacks on the "intrinsic merits" of an award, "no matter how characterized, are without merit, and a refusal to abide by a decision based

---

[70]     *Texas Steel II*, 639 F.2d at 283.

[71]     *Id*.

[72]     *Id*. at 283-84.

upon such grounds is 'without justification.'"[73] Therefore, the Union is entitled to attorneys' fees, and may submit evidence of fees as set forth below.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 10] is GRANTED.  It is further

ORDERED that Defendant's Motion for Summary Judgment [Doc. # 12] is DENIED.  It is further

ORDERED that Plaintiff's Motion to Strike Defendant Greif Packaging, LLC's Response to the Union's Motion for Summary Judgment [Doc. # 15] is DENIED.  It is further

ORDERED that Defendant Grief Packaging, LLC's Motion to Strike Motion for Summary Judgment Evidence [Doc. # 17] is DENIED AS MOOT.  It is finally

ORDERED that Plaintiff may submit evidence supporting its request for attorneys' fees on or before April 21, 2010.

A separate final judgment will issue.  The Court will retain jurisdiction over Plaintiff's request for attorneys' fees.

SIGNED at Houston, Texas, this 7th day of April, 2010.

---

[73]   *Id.* at 284.

P:\ORDERS\11-2009\2252 MSJ.wpd     100407.1513

23

Nancy F. Atlas
United States District Judge